UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YOLONDA MACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 15-1973 (RJL) |
| ) | |
| ASPEN OF DC, INC. et al, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION
(March 30, 2017) [Dkt. # 8]

FILED
MAR 31 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Yolonda Mack ("plaintiff" or "Mack") brings this action against Aspen of DC ("Aspen"), Brandy R. Butler ("Butler"), the District of Columbia Department of General Services ("DC DGS") and DC DGS Acting Director Christopher Weaver ("Weaver"). She alleges discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* against all four defendants, and failure to pay wages in violation of D.C. Code § 32-1012 *et seq.* against Aspen and Butler.

Defendants DC DGS and Weaver ("DGS defendants") filed a Motion to Dismiss the claims against them. [Dkt. # 8]. Upon consideration of the pleadings and relevant law, I will GRANT defendants' motion and dismiss the claims against them without prejudice.

BACKGROUND

According to the allegations in the Amended Complaint, Mack was employed from 2011 to 2014 by Aspen, a company that provides contract employee management and

staffing to government and commercial clients. Am. Compl. ¶ 5 [Dkt. # 1]. Defendant Butler was (and is) Aspen's President and CEO. *Id.* ¶ 6. DC DGS is the District agency that manages District-owned facilities, including oversight of "lease administration and rent collection" at the District-owned Eastern Market facility. *Id.* ¶ 7. Defendant Weaver is DC DGS's Acting Director. *Id.* ¶ 8.

Mack worked as Eastern Market's North Hall Event Space Coordinator, pursuant to a contract between Aspen and DC DGS. *Id.* ¶ 4. During her employment, Mack alleges that she was repeatedly sexually harassed by Katrina Cufffey, a fellow Aspen employee who also worked at Eastern Market. *Id.* ¶¶ 9–13. She alleges that she and Cuffey were both supervised on a daily basis by DC DGS employee Barry Margeson. *Id.* ¶ 9.

Mack alleges that she complained about Cuffey's sexual harassment to Butler and Margeson, but neither stopped the harassment. *Id.* ¶¶ 13–14. She also alleges that the she filed a formal complaint about the harassment with Aspen in February 2014. *Id.* at 15. As a result, she alleges Aspen conducted an internal investigation that concluded that Cuffey sent "sexually explicit communications" that Mack found "uninvited and harassing in nature," advised Cuffey that the alleged behavior violated company policy, and recommended sexual harassment training for both Mack and Cuffey. *Id.* 16–17. Because Cuffey was neither terminated nor meaningfully disciplined, Mack alleges that the internal investigation was a "sham designed to minimize Aspen's liability and reach a

2

predetermined outcome . . . ." *Id.* ¶ 16.

Mack alleges that Aspen and DC DGS retaliated against her after she complained about the sexual harassment. *Id.* ¶ 16. She alleges that Aspen falsely claimed in its investigation written report that the investigation uncovered evidence suggesting the Mack was using illegal drugs at work. *Id.* She also alleges that her contractor position was eliminated in September 2014, that she was not given the chance to compete for a fulltime position with DC DGS, and that Aspen withheld her final paycheck, in retaliation for reporting sexual harassment. *Id.*

## STANDARD OF REVIEW

When ruling on a Rule 12(b)(6) motion to dismiss a complaint, the Court must determine whether the plaintiff's complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The Court must read the complaint's factual allegations in the light most favorable to the plaintiff, *Bell Atlantic Co v. Twombly*, 550 U.S. 544, 555 (2007), but the Court is not required to accept "a legal conclusion couched in the form of a factual allegation" or "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 679. In addition, a claim that is based on an incorrect legal theory must be dismissed, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989).

## ANALYSIS

Mack alleges that Aspen and DGS "intentionally discriminated against [her] in violation of Title VII by retaliating against her for opposing unlawful sex discrimination." Compl. ¶ 28. To establish a prima facie Title VII claim for discrimination, the plaintiff must show "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). For a retaliation claim, a plaintiff must show "that she engage in protected activity, that she suffered an adverse employment action, and that there was a causal link between the former and the latter." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015).

As an initial matter, Mack sued the wrong defendants. Mack names DC DGS, a subordinate agency in the District's government, as one of the defendants. However, the District of Columbia is the proper defendant in a Title VII case, rather than any subordinate government agencies or departments. *Hunter v. D.C. Child & Family Servs. Agency*, 710 F. Supp. 2d 152, 157 (D.D.C. 2010) ("[I]n a Title VII case against the District of Columbia, the District is the proper defendant, not its agencies."). Furthermore, Mack sues DC DGS Acting Director Weaver in his official capacity. The Supreme Court has noted that "[t]here is no . . . need to bring official-capacity actions against local government officials, for . . . local government units can be sued directly for

4

damages or injunctive relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985). As a result, the proper defendant here is the District of Columbia.

Mack asks the Court to construe defendants' motion as a motion to substitute the proper parties, and she is correct that courts of this District have chosen to substitute the District as a defendant when a plaintiff erroneously names a District agency as a defendant. *See, e.g., Sampson v. D.C. Dep't of Corrections*, 20 F. Supp. 3d 282, 285 (D.D.C. 2014) (construing motion to dismiss as motion to substitute and substituting the District as the proper defendant). However, I decline to do so here because the Mack's claim against DC DGS and Weaver—or the District—must be dismissed whether or not the proper defendant is named.

Title VII prohibits "employers" from discriminating against their employees. 42 U.S.C. § 2000e, § 2000e-2, § 2000e-3. Here, Mack has not alleged facts that, taken as true, would state a claim that DC DGS was her employer.[1] Mack alleges that she worked at Eastern Market pursuant to a contract between Aspen and DC DGS. Under such circumstances, courts have found it possible for an individual to be a "joint employee" of both an employment agency and the client entity. The Courts of this District apply two difference tests to determine whether an individual has joint employers. Under the first test, referred to as the *Browning-Ferris* test, the court looks at whether "two or more

---

[1] To the extent that Mack's claim includes an allegation that DC DGS refused to hire her for a position on the basis of discrimination and retaliation, she does not need to allege that DC DGS was already her employer. However, she has not alleged facts that would establish a causal link between reporting harassment to Aspen in February 2014 and DC DGS's decision to not hire her seven months later.

employers exert significant control over the same employee—where it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." *NLRB v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982); *Redd v. Summers*, 232 F.3d 933, 938 (D.C. Cir. 2000) (referring to *Browning-Ferris* test as a "fairly standard formulation" of the joint employment test); *Coles v. Harvey*, 471 F. Supp. 2d 46, 50–51 (D.D.C. 2007) (applying *Browning-Ferris* test).

The other test, often referred to as the "*Spirides* factors", requires courts to weigh 12 separate factors when determining whether an entity can be considered a joint employer. The first and most important consideration is whether the alleged additional employer "has the right to control and direct the work of [the] individual, not only as to the result to be achieved, but also as to the details by which that result is achieved." *Spirides v. Reinhardt*, 613 F.2d 826, 831–32 (D.C. Cir. 1979). After considering this, the court should weigh the following eleven factors:

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i. e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id. See also Simms v. D.C. Gov't*, 587 F. Supp. 2d 269, 273-75 (D.D.C. 2008).

Our Circuit has invoked the *Spirides* factors and the *Ferris-Browning* test for joint employment, but has declined to resolve which of the two tests should govern. *Redd v. Summers*, 232 F.3d 933, 937–38 (D.C. Cir. 2000). I need not decide which test should govern here, because Mack's claims against DC DGS fail under either test. Even construing her allegations favorably, her complaint does not allege that DC DGS was her employer. On the contrary, Mack explicitly alleges that Aspen was her "employer" from 2011 to 2014. Compl. ¶ 4. Furthermore, she alleges that Aspen conducted the internal investigation into her harassment and prepared a written report with its conclusions. *Id.* ¶¶ 16–17. She also alleges that Aspen withheld her final paycheck, indicating that Aspen controlled the terms of her payment. *Id.* ¶

Her allegations are much thinner with respect to DC DGS. She simply alleges that she "reported to and [was] directly supervised" by a DC DGS employee on a daily basis. By itself, that indicates that DC DGS exercised some supervision over her work, but it does not allege that DC DGS "share[d] or co-determine[d] [the] matters governing essential terms and conditions of [her] employment" or that DC DGS could "control and direct" both the details and the results of her work. The complaint is unclear about the scope of DC DGS's authority over her—whether it had authority to change her method

and amount of payment, [2] her responsibilities, her place of work, her work schedule, her method and amount of payment, or could choose to discipline or terminate her. Notably, Mack alleges that "she was notified" in September 2014 that her contractor position was being eliminated and that her last day of work would be September 30, 2014, but she does not specify who notified her, or whether DC DGS played any role in the decision to terminate her specifically, as compared to other Aspen contract employees. The joint employment test is a fact-intensive inquiry, and at the motion to dismiss stage, Mack need not allege every facet of her relationship with DC DGS to allege that it was a joint employer. But she must provide more detail than she has for the Court to include that the District was her employer for purposes of Title VII liability, particularly when she explicitly alleges that another entity—Aspen—was her employer. Because of the paucity of her allegations against DC DGS, she has not sufficiently alleged that the District was her "employer" for purposes of Title VII liability, and the claim against DC DGS and Weaver must be dismissed.

However, I will dismiss the claim against DC DGS and Weaver without prejudice. Our Circuit has stated that "dismissal with prejudice is warranted only when a trial court determines that the allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d

---

[2] The complaint does allege that her DC DGS supervisor told her in 2014 that she would receive an hourly rate increase. *Id.* ¶ 18. She does not allege whether DC DGS made the decision to raise her pay or was simply communicating a decision that Aspen made. This statement is not enough by itself to suggest that DC DGS exercised control over the method and terms of her payment.

1205, 1209 (D.C. Cir. 1996). Although her allegations about DC DGS are insufficient here, I am not convinced that she is unable to plead other facts, consistent with the current Complaint, that would cure the deficiency and state a claim that DC DGS was her joint employer with Aspen.

## CONCLUSION

For all of the foregoing reasons, the Court will DGS defendants' Motion to Dismiss the claims against them without prejudice. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge